1  SPILLANE SHAEFFER
     ARONOFF BANDLOW LLP
2  Jay M. Spillane (Bar No. 126364)
   jspillane@ssablaw.com
3  Jeffrey H. Grant (Bar No. 218974)
   jgrant@ssablaw.com
4  Emily S. Birdwhistell (Bar No. 248602)
   ebirdwhistell@ssablaw.com
5  1880 Century Park East, Ste 1004
   Los Angeles, CA 90067-2627
6  Telephone: (310) 229-9300
   Fax: (310) 229-9380
7
   Gerard R. Kilroy (Bar No. 94023)
8  gkilroy@unicomsi.com
   UNICOM Systems, Inc.
9  15535 San Fernando Mission Blvd., Ste 310
   Mission Hills, California 91345
10 Telephone: (818) 838-0606
   Fax: (818) 838-0776
11
   Attorneys for Plaintiff
12 UNICOM Systems, Inc.

13            UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

15

16 UNICOM SYSTEMS, INC., a California    Case No. CV 04 4604 AJW
   corporation,
17
                    Plaintiff,          **REPLY MEMORANDUM OF**
18                                       **POINTS AND AUTHORITIES IN**
         v.                              **SUPPORT OF PLAINTIFF UNICOM**
19                                       **SYSTEMS, INC.'S MOTION FOR A**
   FARMERS GROUP, INC.,                  **NEW TRIAL OR, IN THE**
20                                       **ALTERNATIVE, AMENDMENT OF**
                    Defendant.           **JUDGMENT**
21
22                                       Date: March 31, 2008
                                         Time: 10:00 a.m.
23                                       Courtroom: 690
                                         Hon. Andrew J. Wistrich
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ................................................................................ 1

    Confused Verdict.................................................................................................. 1

    Erroneous Evidence and Argument .................................................................... 3

    Erroneous Instructions ...................................................................................... 4

    Amendment of Judgment .................................................................................. 5

ARGUMENT.......................................................................................................... 5

I.     A NEW TRIAL IS REQUIRED .................................................................... 5

    A.     Standard For A New Trial............................................................... 6

    B.     A New Trial is Required Where, As Here, The Jury's Verdict Cannot Be Reconciled With The Evidence And The Jury Instructions .............. 6

          1.     The Evidence................................................................. 7

          2.     UNICOM's Proposed Verdict Form ............................. 8

          3.     The Court's Verdict Form............................................. 9

          4.     Farmers' Opposition Evidences Confusion and Strained Attempts to Reconcile the Verdict ............................... 10

    C.     Prejudicial and Irrelevant Evidence and Argument Warrants a New Trial........................................................................................ 11

    D.     Erroneous Instructions Require A New Trial....................................... 13

    E.     The Verdict Reflects Compromise ..................................................... 16

II.    IN THE ALTERNATIVE, THE COURT SHOULD AMEND THE JUDGMENT ...................................................................................... 17

    A.     UNICOM Is Entitled To Amendment Of The Judgment As A Matter Of Law Where Facts Are Not In Dispute................................... 17

    B.     UNICOM Is Entitled to Prejudgment Interest...................................... 20

          1.     UNICOM is Entitled to Prejudgment Interest on its Copyright and DMCA Claims................................................... 20

          2.     UNICOM is Entitled to Prejudgment Interest, or, Alternatively, Late Fees Due Under The TSC Agreement Because UNICOM's Fraud Claim Arises Out of Contract ............................. 20

i

SSAB LLP

1

CONCLUSION...................................................................................... 21

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SSAB LLP

ii

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Barrett v. Safeway Stores, Inc.,*
   538 F.2d 1311 (8th Cir. 1976) ...................................................................6, 7

*Bulgo v. Munoz,*
   853 F.2d 710 (9th Cir. 1988)......................................................................16

*Continental Oil Co. v. United States,*
   184 F.2d 802 (9th Cir. 1950)......................................................................21

*Dimick v. Schiedt,*
   293 U.S. 474, 55 S. Ct. 296 (1935) ....................................................... 18, 19

*Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.,*
   890 F.2d 165 (9th Cir. 1989) .....................................................................14

*Feltner v. Columbia Pictures Television, Inc.,*
   523 U.S. 340, 118 S.Ct. 1279 (1998).............................................................8

*Gambini v. Total Renal Care, Inc.,*
   486 F.3d 1087 (9th Cir. 2007).....................................................................15

*Hoffman-La Roche, Inc. v. Promerga Corp.,*
   319 F. Supp. 2d 1011, (N.D. Cal. 2004) ......................................................13

*James v. Tilghman,*
   194 F.R.D. 408 (D. Conn. 1999) .................................................................19

*Jones v. Aero/Chem. Corp.,*
   921 F.2d 875 (9th Cir. 1990) ........................................................................9

*Kosmynka v. Polaris Industries, Inc.,*
   462 F.3d 74 (2nd Cir. 2006).........................................................................7

*Liriano v. Hobart Corp.,*
   170 F.3d 274 (2nd Cir. 1999)........................................................... 18, 19, 20

*Molski v. M.J. Cable, Inc.,*
   481 F.3d 724 (9th Cir. 2007) ......................................................................12

*Montgomery Ward & Co. v. Duncan,*
   311 U.S. 243, 61 S.Ct. 189 (1940)................................................................6

*Newburger, Loeb & Co., Inc. v. Gross,*
   611 F.2d 423 (2nd Cir. 1979).....................................................................21

*Paddington Partners v. Bouchard,*
   34 F.3d 1132 (2nd Cir. 1994).....................................................................21

*Philippine National Oil Co. v. Garret Corp.,*
    724 F.2d 803 (9th Cir. 1984) ..................................................................17

*Polar Bear Productions, Inc. v. Timex Corp.,*
    384 F.3d 700 (9th Cir. 2004) ...................................................................12

*Roy v. VW of Amer., Inc.,*
    896 F.2d 1174 (9th Cir. 1990)......................................................................6

*S.O.S. Inc. v. Payday, Inc.,*
    886 F.2d 1081 (9th Cir. 1989)....................................................................10

*Swinton v. Potomac Corp.,*
    270 F.3d 794 (9th Cir. 2001)......................................................................15

*Taylor v. Green,*
    868 F.2d 162 (5th Cir. 1989) .....................................................................19

*U.S. v. Marolf,*
    173 F.3d 1213 (9th Cir. 1999).....................................................................19

*U.S. E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc.,*
    117 F.3d 1244 (11th Cir. 1997) ..................................................................19

*Wilson v. Eberle,*
    18 F.R.D. 7 (D. Alaska 1955) .....................................................................19

*Wood v. Holiday Inns, Inc.,*
    508 F.2d 167 (5th Cir. 1975).......................................................................6

*Zhang v. American Gem Seafoods, Inc.,*
    339 F.3d 1020 (9th Cir. 2003)......................................................................7

**STATE CASES**

*California Med. Ass'n, Inc. v. Aetna U.S. Healthcare,*
    94 Cal App. 4th 151, 114 Cal. Rptr. 2d 109 (2001)..................................15

*Camp v. Jeffer Mangles, Butler & Marmaro,*
    35 Cal App. 4th 620, 41 Cal. Rptr. 2d 329 (1995)...................................13

*Goldstein v. Lees,*
    46 Cal App.3d 614, 120 Cal. Rptr. 253 (1975)........................................13

*Harris  v. Kessler,*
    124 Cal App. 299, 12 P.2d 467 (1932) .....................................................15

*Hedging Concepts, Inc. v. First Alliance Mortg. Co.,*
    41 Cal App. 4th 1410, 49 Cal. Rptr. 2d 191 (1996)..................................15

*Roddenberry v. Roddenberry,*
    44 Cal App. 4th 634, 51 Cal. Rptr. 2d 907 (1996)......................................8

*Shvarts  v. Budget Group, Inc.,*
    81 Cal App. 4th 1153, 97 Cal. Rptr. 2d 722 (2000)..................................15

SSAB LLP

1

2

**STATE STATUTES**

Cal. Civ. Code § 3277 ....................................................................21

Cal. Civ. Code § 3288 ....................................................................21

**TREATISE**

12 James Wm. Moore et al.,
   Moore's Federal Practice ¶59.13[2][f][ii][a] (3d ed. 2007)........................6

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SSAB LLP

# SUMMARY OF ARGUMENT

Farmers urges that UNICOM is supposedly taking a verdict that is consistent with and supported by the great weight of the evidence, and straining for ways to find confusion and error. To the contrary, UNICOM urges that it is Farmers that has strained to harmonize a result that is inexplicable and contrary to the great weight of the evidence.

In evaluating UNICOM's new trial motion, the Court should not apply the deferential substantial evidence standard. Rather, the court may, and should, grant the motion where the result is contrary to the great weight of the evidence, manifests jury confusion or is infected with error, such that justice requires a new trial. Here, UNICOM has met its burden.

**Confused Verdict**. The verdict itself exemplifies the jury's confusion and the need for a new trial. At trial, UNICOM adduced one theory of damages – that Farmers engaged in use of the software for which it failed to pay upgrade fees, prorated maintenance fees and annual maintenance fees. No fees for such use were introduced at trial save for UNICOM's stated fees and the rejected "tier group" fees charged by TSC. UNICOM urged that these fees arose from either "authorized" use – i.e. breach of contract – or "unauthorized" use – i.e. copyright infringement and/or trade secret misappropriation. UNICOM urged that some or all of the same body of lost fees could also constitute the damages for circumvention and fraud. It was important for the jury to attribute a singular body of lost fees to all potentially applicable claims, for purposes of determining who prevailed and to provide a benchmark for measuring potential awards of punitive damages under the trade secret and fraud claims. This result could have been achieved through use of a verdict form tailored to UNICOM's theory of the case, explicit argument and instruction to the jury explaining that they could attribute one body of loss to multiple legal theories without fear of awarding double recovery, or both.

1       Farmers gave the jury no competing theory of damages. Farmers merely stated

2  that the jury could find against UNICOM and/or award an offset if it found that

3  UNICOM had overreached or failed to give notice of fees. The only specific figure

4  adduced by Farmers was its claimed setoff based upon the rejected "tier group"

5  pricing.

6       <u>Neither</u> party introduced evidence or argument supporting what the jury actually

7  did. No party argued that there was a body of damages solely attributable to

8  fraudulent concealment, the result the jury reached. The <u>only</u> evidence at the trial was

9  that if license fees were unpaid, then such fees would be compensable under the

10 contract theory, the copyright/trade secret theory or both. No party introduced

11 evidence or argument that the jury could award lost fees to UNICOM under a fraud

12 theory, which lost fees were not also compensable under the contract claim, the

13 copyright/trade secret claims or both. The verdict cannot be explained by the evidence

14 or by any theory of the case argued by either side.

15      UNICOM did not waive its objections to the verdict at the trial. The Court's

16 verdict form would have avoided error only with careful argument and/or instruction

17 explaining how the jury could attribute a single loss to multiple theories without fear

18 of awarding double recovery. However, the Court refused UNICOM's request to

19 make these arguments at closing and did not instruct the jury as to how the verdict

20 form, the theory of the case and the instruction against double recovery interrelated.

21      Farmers' argument that UNICOM supposedly "failed" to introduce "fraud

22 damages" is a reprise of its rejected Rule 50 motion on the fraud claim. UNICOM's

23 damages flowing from Farmers' fraudulent concealment <u>were</u> the license fees Farmers

24 failed to pay by not disclosing its use. Farmers' opposition underscores rather than

25 explains away the confusion from which the jury suffered. Farmers interprets the

26 results as having shown that "Farmers did not exceed the scope of its license," when

27 the very definition of copyright infringement in this case, on which the jury found in

28 UNICOM's favor, <u>was</u> use by Farmers of PIE/CICS in excess of its license. Farmers'

1  only theory explaining how the jury could have awarded UNICOM fraud damages
2  alone is that the $816,000 award arises from Farmers' failure to pay for annual
3  maintenance. However, UNICOM's right to collect annual maintenance arose from
4  the license agreement. If the jury had reasoned as Farmers surmises, then the damages
5  for failure to pay annual maintenance fees should also have been awarded under the
6  breach of contract claim.

7  **Erroneous evidence and argument**. Throughout the trial Farmers urged
8  positions that were irrelevant, prejudicial or which no reasonable jury could support.
9  Whenever possible Farmers argued the irrelevant and prejudicial position that the jury
10  should nullify the evidence and the law and punish UNICOM by finding UNICOM
11  generally greedy and overreaching. Farmers conveyed this message to the jury by
12  arguing in opening statement, at trial and in closing argument that this case was just
13  like an outright purchase of consumer software at Best Buy. Farmers argued in
14  opening statement, at trial and in closing that this case was one in which UNICOM
15  wrongfully attempted to repossess paid-up property. Farmers argued in opening
16  statement, at trial and in closing that the term "perpetual" did connote that Farmers
17  paid for the software and that the term afforded a defense to unpaid upgrade fees,
18  prorated maintenance fees and annual maintenance fees. All of these arguments
19  infected the jury with the irrelevant and prejudicial idea that UNICOM should be
20  punished by attempting to take back something Farmers owned. The inflammatory
21  and prejudicial effects of this message can be seen in the results.

22  Farmers argued in opening statement, at trial and in closing that UNICOM
23  should only collect fees, if at all, based upon Farmers' rejected "tier group" argument.
24  Farmers elicited testimony from Tom Politowski and its expert, Terry Lloyd, in
25  support of this rejected argument

26  While Farmers argued that it strained all of its irrelevant, prejudicial and
27  rejected arguments through the theme of "notice," no reasonable juror could have
28  found in Farmers' favor. Even accepting Farmers' position that UNICOM technically

1   breached the license agreement by failing to mail to each licensee a page each January
2   setting forth the new prices applicable to the software such licensee was using, such a
3   breach would have been so technical and non-material that no reasonable juror could
4   have concluded that any such failure relieved Farmers of its duty to pay UNICOM's
5   stated prices.  The evidence was uncontroverted that Farmers knew the prices
6   applicable to the three upgrades that it disclosed to UNICOM before deciding to pay
7   those prices.  UNICOM had no opportunity to notify Farmers of the fees that would
8   apply to any other uses by Farmers of PIE/CICS because Farmers fraudulently
9   concealed such uses.  Thus, any technical failure by UNICOM to "notify" Farmers of
10  fees of which Farmers was already aware, or fees applicable to uses Farmers
11  concealed, cannot as a matter of law have constituted a material breach relieving
12  Farmers of the duty to pay at the quoted rates.

13       Farmers continues to urge that the software purchase price was relevant, citing
14  no authority other than a single case involving quoted license fees.  UNICOM did not
15  waive its objections to introduction of this evidence at trial.  When the Court denied
16  UNICOM's motion in limine and ordered that this evidence would come in, UNICOM
17  attempted to ameliorate the resulting prejudice by referring to the evidence first.  Such
18  a decision in the face of an overruled objection does not constitute waiver.

19       **Erroneous instructions**.  The prejudicial effects of Farmers' arguments that
20  UNICOM should be punished for generally inequitable conduct was compounded by
21  the unclean hands instruction, which erroneously instructed the jury that it could find
22  against UNICOM on all claims if UNICOM behaved in such fashion.  Farmers'
23  authorities for application of an unclean hands defense to a contract claim all involve
24  equitable pleas that would void a contract as a whole, such as fraudulent procurement
25  or unconscionability, or which would avoid application of injunctive relief or other
26  equitable remedies.  The authorities uniformly hold that **no** equitable theory may be
27  employed to rewrite or ignore specific terms of an express contract for purposes of a
28  damage claim where such terms control the rights and duties of the parties.  The Ninth

1  Circuit has expressly held that an unclean hands defense does not apply to a claim for

2  damages for breach of contract in the manner here urged by Farmers.

3      The Court also erred in giving Farmers' setoff instruction. Farmers urges that it

4  made a demand for money, one that could be asserted as a setoff, in its May 4, 2001

5  letter to UNICOM, Tr. Ex. 211. However, the claimed setoff is based only upon the

6  application of "tier group pricing" and the theory of "notice," which no reasonable

7  juror could reply upon.

8      **Amendment of Judgment**. If the Court concludes that any errors in the trial do

9  not warrant a new trial, the Court can, and should, amend the Judgment. Farmers did

10  not materially controvert UNICOM's evidence – through emails, party admissions and

11  answers to interrogatories – that Farmers engaged in use of PIE/CICS on all seven

12  mainframe CPUs through at least January 2003. The only material controversy at trial

13  concerning the extent of Farmers' use of the software involved the effect of use of

14  PIE/CICS-Netgate. Farmers offered no alternative damage figures for the undisputed

15  use, instead urging generally (and impermissibly) that UNICOM's damage claim

16  should be nullified through generally inequitable behavior. Where, as is the case here,

17  there was no material factual controversy, the court can correct the judgment by

18  awarding the damages applicable to such uncontroverted use – $4,100,280. Farmers

19  incorrectly refers to such relief as additur, wherein the Court merely substitutes its own

20  judgment on damages for that of the jury. Here, UNICOM is merely requesting that

21  the Court award a sum that was introduced into evidence and not controverted.

22      In addition, the Court can, and should, award prejudgment interest from no later

23  than May 1, 2004, the day after all use of PIE/CICS ceased.

24                          **ARGUMENT**

25  **I.    A NEW TRIAL IS REQUIRED.**

26      UNICOM's motion is based on a number of grounds, including the

27  irreconcilable jury verdict, the improper introduction and admission of evidence and

28  argument, improper jury instructions and the clear weight of the evidence.

1  UNICOM's opening papers set forth law – largely ignored by Farmers – that describes

2  all of these grounds as sufficient to warrant a new trial.

3  **A.    Standard For A New Trial.**

4  The Court has broad discretion to grant a new trial.  In evaluating UNICOM's

5  motion, the Court should <u>not</u> apply the deferential substantial evidence standard.

6  Rather, grounds for a new trial include, but are not limited to, a verdict against the

7  clear weight of the evidence, inadequate or excessive damages or errors in the

8  admission or rejection of evidence or the giving or refusal of instructions.

9  *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S. Ct. 189 (1940) (non-

10  exclusive list of grounds for new trial includes against weight of evidence, trial unfair).

11  Farmers' assertion that a new trial is appropriate only in cases of a "miscarriage of

12  justice" is belied by their own authority.  *See* Farmers' Memo in Opp., at 3:9-13 (trial

13  court can grant new trial if "'the verdict is contrary to the clear weight of the evidence,

14  or is based upon evidence which is false, or to prevent, in the sound discretion of the

15  trial court, a miscarriage of justice'") [*quoting Roy v. VW of Amer., Inc.,* 896 F.2d

16  1174, 1176 (9th Cir. 1990)].

17
    **B.    A New Trial Is Required Where, As Here, The Jury's Verdict Cannot**
18        **Be Reconciled With The Evidence And The Jury Instructions.**

19  A jury's verdict cannot stand where it cannot be reconciled.  "A general verdict

20  that is facially inconsistent and reflects confusion on the part of the jury is substantial

21  grounds for new trial." 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶

22  59.13[2][f][ii][a] (3d ed. 2007).  Farmers made no attempt to distinguish the

23  substantial authorities cited by UNICOM supporting the relief of a new trial based

24  upon an inconsistent jury verdict: *Wood v. Holiday Inns, Inc.,* 508 F.2d 167, 175 (5th

25  Cir. 1975) (if verdicts in the same case are inconsistent on their faces indicating that

26  jury was confused, new trial is certainly appropriate and might even be required);

27  *Barrett v. Safeway Stores, Inc.,* 538 F.2d 1311, 1317 (8th Cir. 1976) ("In the face of

28  these inconsistent verdicts, the present judgment cannot stand and a new trial is

1   necessary."); *Kosmynka v. Polaris Industries, Inc.*, 462 F.3d 74, 86 (2nd Cir. 2006)

2   (district court's grant of motion for new trial upheld in a products liability case where

3   the jury's finding that the defendant was negligent, but that there was no defect in the

4   design or warning, amounted to an inconsistent verdict under New York law); *Barrett*

5   *v. Safeway Stores, Inc.*, 538 F.2d 1311, 1317 (8th Cir. 1976) ("In the face of these

6   inconsistent verdicts, the present judgment cannot stand and a new trial is necessary.").

7       Farmers cites authorities that a court should not replace the jury's judgment with

8   its own by ordering a new trial in the face of a consistent verdict. Farmers' Opp. 13-

9   14. Here, however, the jury's verdict cannot be harmonized by the evidence and by

10  the theories of the case urged by the parties.

11      Farmers' reliance on *Zhang v. American Gem Seafoods, Inc.*, 339 F.3d 1020,

12  1035 (9th Cir. 2003) is unfounded. The *Zhang* court held that a court should not view

13  a general verdict or series of general verdicts as irreconcilable where "under any facts,

14  [they] seem to be <u>legally</u> irreconcilable." 339 F.3d at 1032, 1034-37. Here, UNICOM

15  is not urging that the verdict is <u>legally</u> irreconcilable under any set of facts. It is

16  possible, under a set of facts other than that presented at this trial, for a jury to award

17  damages under a fraudulent concealment claim while not also awarding damages

18  under a contract or copyright claim. Here, the verdict is irreconcilable with the

19  <u>evidence</u> presented to the jury and with the <u>theories of the case</u> presented by the

20  parties.

21          *1.    The Evidence.*

22      The evidence at trial established that UNICOM suffered a singular damage

23  consisting of lost license fees, broken out by authorized and unauthorized use. All of

24  UNICOM's losses stemmed from the same conduct – use of the PIE/CICS Software

25  for which Farmers did not pay. Some of that use was *within* the scope of the TSC

26  Agreement and constituted a breach of contract. Some of Farmers' use was *in excess*

27  *of* the scope of the TSC Agreement and constituted copyright infringement and

28  potentially trade secret misappropriation. At *no* time did UNICOM *or Farmers* offer

1  evidence of any damage solely attributable to the fraudulent concealment claim, such

2  as out of pocket losses or delay damages, or any other claim.  Contrary to Farmers'

3  arguments, this was not a failure to present so-called "fraud damages" to the jury.  As

4  demonstrated in, among other places, UNICOM's opposition to Farmers' Rule 50

5  motion to dismiss the fraud claim, the unpaid license fees were compensable under the

6  fraudulent concealment claim in addition to the contract and/or copyright claims.

7  *Roddenberry v. Roddenberry,* 44 Cal. App. 4th 634, 51 Cal. Rptr. 2d 907 (1996).

8          2.    *UNICOM's Proposed Verdict Form.*

9          UNICOM proposed a verdict form that both accounted for the fact that damages

10  for the same loss were available under more than one claim and avoided double

11  counting damages.  Plaintiff UNICOM's Proposed Verdict Form (Dkt. # 254).

12  UNICOM's proposed verdict form asked the jury whether it found Farmers liable on

13  the contract claim and, if so, to assess damages for Farmers' failure to pay for

14  authorized use of the PIE/CICS Software.  *Id*. at 1-2.  UNICOM's proposed verdict

15  form also asked the jury whether it found Farmers liable on the infringement *or* the

16  trade secret misappropriation claims and, if so, to assess damages for Farmers' failure

17  to pay for *unauthorized* use of the PIE/CICS Software.  *Id*. at 2-3.  In this way, the jury

18  could award damages consistent with the evidence and avoid double counting any loss.

19  *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 347 n 5, 118 S.Ct.

20  1279 (1998) (affirming power of jury to decide statutory copyright infringement

21  damages in the alternative, and plaintiff's right to make selection after verdict is

22  rendered).

23          For example, the jury could have decided that Farmers failed to pay $2,000,000

24  in fees, $1,000,000 within the scope of the contract and $1,000,000 beyond the scope

25  of the contract.  Consistent with the evidence and the theories of the case, the jury

26  could have awarded $1,000,000 for breach of contract, $1,000,000 for both the

27  copyright infringement and trade secret theories and the entire loss – $2,000,000 – to

28  the fraudulent concealment claim.  Such a verdict would have resulted in a judgment

SSAB LLP

1  of $2,000,000 in compensatory damages – not $5,000,000. Double counting would

2  have been avoided. The exercise of filling out the verdict in this way would have been

3  nevertheless important for purposes of determining the prevailing party, for an award

4  of attorneys' fees and for measuring the proportion between actual damages and any

5  punitive damages under the trade secret and fraud theories.

6          However, the Court rejected UNICOM's proposal.

7                  3.      *The Court's Verdict Form.*

8          The verdict form prepared by the Court forced the jury to select separate damage

9  awards for each claim. Neither the verdict nor the jury instructions explained how,

10  consistent with UNICOM's theory of the case, the jury could assess a singular body of

11  damages across multiple claims without fear of awarding double recovery. The

12  disconnect between the evidence and the verdict form was compounded by the Court's

13  jury instructions. Instruction No. 59 notes that, despite all of the evidence presented at

14  trial concerning the singular identity of UNICOM's loss, the jury *could not* award

15  UNICOM damages for the same loss on multiple claims:

16          Unicom has made claims against Farmers for breach of contract,

17          copyright infringement, circumvention, misappropriation of trade

18          secrets, and fraud. *If you decide that Unicom has proved two or more*

19          *of its claims, the same damages that resulted from those claims can be*

20          *awarded only once.* ¶ You may consider awarding punitive damages

21          only if Unicom proves its claim for fraud.

22  (Dkt. # 419) (emphasis added).

23          Farmers is not correct that UNICOM waived any objections to the verdict form.

24  Before closing argument UNICOM requested the ability to argue how the form could

25  be used consistent with the theories of the case in a fashion that would not result in

26  double recovery. This request was refused. Further, UNICOM is not so much

27  objecting to the form itself as to the inconsistent results reflected by the jury on the

28  form.

1          4.    *Farmers' Opposition Evidences Confusion and Strained Attempts*
2                *to Reconcile the Verdict.*

3          Farmers' attempts to harmonize the verdict merely prove the jury's confusion.

4    Farmers itself confuses the damages due under the copyright infringement and breach

5    of contract claims.  In its Opposition, Farmers argued:

6          Fundamentally, the jury found that Farmers did not breach the

7          Farmers-TSC Agreement, meaning that Farmers did not use the PIE

8          Software beyond the scope of that Agreement.  This conclusion – that

9          Farmers did not exceed the scope of its license – also explains why

10         the jury awarded no damages for copyright infringement or for the use

11         of the password "zap" under the circumvention claim.

12   Farmers' Memo. in Opp., at 2:3-7 (Dkt. # 459).  Of course, the jury found that

13   Farmers' was liable for copyright infringement, meaning that Farmers *did* use the PIE

14   Software beyond the scope of the TSC Agreement.  Licensees are liable for copyright

15   infringement, not breach of contract, when they use copyrighted material outside the

16   scope of the license.  *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087-1088 (9th Cir.

17   1989) ("A licensee infringes the owner's copyright if its use exceeds the scope of its

18   license.").  Farmers' attempts to harmonize the jury's verdict prove harmonization is

19   impossible.

20         Farmers also argues in a footnote that its receipt of maintenance in March of

21   2002 could be construed to be fraud damages independent of UNICOM's contract and

22   infringement actions.  Farmers' Memo. in Opp., at 18 n. 5.  Neither party, however,

23   presented evidence of the value of maintenance services divorced from the contractual

24   maintenance fee of 15% of the license fee.  Neither party argued or introduced

25   evidence that the March 2002 package was generally worth $816,000, nor did any

26   party introduce evidence concerning how maintenance services would generally be

27   priced or how they would be priced on an open market.  Indeed, the <u>only</u> basis

28   UNICOM would have had for charging and collecting maintenance fees was the

1   obligation to pay for maintenance fees under the parties' license agreement. Thus,

2   Farmers' nonpayment of amounts due under the Agreement would have necessarily

3   constituted a breach of contract.

### C.    Prejudicial and Irrelevant Evidence and Argument Warrants a New Trial.

6   Throughout the litigation Farmers urged a series of irrelevant and prejudicial

7   arguments. Whenever possible Farmers argued the irrelevant and prejudicial position

8   that the jury should nullify the evidence and the law and punish UNICOM by finding

9   UNICOM generally greedy and overreaching. Farmers conveyed this message to the

10  jury by arguing in opening statement, at trial and in closing argument that this case

11  was just like an outright purchase of consumer software at Best Buy. Farmers argued

12  in opening statement, at trial and in closing that this case was one in which UNICOM

13  wrongfully attempted to repossess paid-up property. Farmers argued in opening

14  statement, at trial and in closing that the term "perpetual" did connote that Farmers

15  paid for the software and that the term afforded a defense to unpaid upgrade fees,

16  prorated maintenance fees and annual maintenance fees.

17  Farmers' offset claim was based on the rejected argument that UNICOM was

18  required to charge Farmers in "tier groups" and not MIPS. That fallacy was rejected

19  by the Court in its ruling on UNICOM's Motion in Limine No. 2. (Dkt. # 319).

20  However, during trial Farmers continued to make thinly veiled efforts to urge its tier

21  group theory to the jury. Farmers elicited testimony from several witnesses, including

22  former Farmers' employees and Thomas Politowski, the former owner of TSC, that

23  TSC always charged its Farmers on a "tier-groups" basis. Further, the Court admitted

24  evidence and testimony through Farmers' expert Terry Lloyd that Farmers was due a

25  refund of over $300,000, and permitted the jury to consider Farmers' "setoff" defense,

26  when the only basis for such evidence, testimony and defense was that UNICOM was

27  obliged to extend tier pricing.

1    Farmers argues in its opposition brief that it packaged all of its prejudicial,

2    irrelevant and rejected arguments under the potentially relevant but ultimately

3    immaterial theory of "notice."  However, no reasonable juror could have found in

4    Farmers' favor under its notice theory.  The jury was instructed that before a party

5    sued for breach of contract may be relieved of its duties, any breach by the party suing

6    must be material.  Jury Instr. 21.  Even accepting Farmers' position that UNICOM

7    technically breached the license agreement by failing to mail to each licensee a page

8    each January setting forth the new prices applicable to the software such licensee was

9    using, such a breach would have been so technical and non-material that no reasonable

10   juror could have concluded that any such failure relieved Farmers of its duty to pay

11   UNICOM's stated prices.  The evidence was uncontroverted that Farmers knew the

12   prices applicable to the three upgrades that it disclosed to UNICOM before deciding to

13   pay those prices.  UNICOM had no opportunity to notify Farmers of the fees that

14   would apply to any other uses by Farmers of PIE/CICS because Farmers fraudulently

15   concealed such uses.  Thus, any technical failure by UNICOM to "notify" Farmers of

16   fees of which Farmers was already aware, or fees applicable to uses Farmers

17   concealed, cannot as a matter of law have constituted a material breach relieving

18   Farmers of the duty to pay at the quoted rates.

19   These errors were compounded by the Court's order overruling UNICOM's

20   motion *in limine* seeking exclusion of the purchase price for the PIE/CICS software.

21   To this day, Farmers has cited no authority supporting the relevance of evidence of the

22   price for purchasing a package of assets, or any allocation of that purchase price, when

23   determining license fees for a copyright or trade secret claim.  Farmers cites no

24   authority that a license fee may be determined through return-on-investment or other

25   similar theories based upon the acquisition price for an asset.  Farmers' only case

26   continues to be *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir.

27   2004), which is a case involving actually quoted license fees, not the acquisition cost

28   for a licensable asset.

1    UNICOM did not waive its objections in this regard by referring to the purchase

2    price at trial.  In the face of the Court's order denying UNICOM's motion *in limine*

3    and ordering that evidence of purchase price would be introduced at trial, UNICOM

4    elected the ameliorate the resulting prejudice by referring to this evidence first.  None

5    of Farmers' cases involve a ruling, such as the one at issue here, that evidence is

6    <u>admissible</u> in the face of an objection thereto.

7    **D.    Erroneous Instructions Require A New Trial.**

8    The prejudicial effects of Farmers' arguments that UNICOM should be

9    punished for generally inequitable conduct was compounded by the unclean hands

10   instruction, No. 57.  Farmers' authorities for application of an unclean hands defense

11   to a contract claim all involve equitable pleas that would avoid a contract as a whole,

12   such as fraudulent procurement or unconscionability, or which would avoid

13   application of injunctive relief or other equitable remedies.  The authorities uniformly

14   hold that **no** equitable theory may be employed to rewrite or ignore specific terms of

15   an express contract for purposes of a damage claim where such terms control the rights

16   and duties of the parties.  The Ninth Circuit has expressly held that an unclean hands

17   defense does not apply to a claim for damages for breach of contract in the manner

18   here urged by Farmers.

19   In *Camp v. Jeffer, Mangels, Butler & Marmaro*, 35 Cal. App. 4th 620, 638, 41

20   Cal. Rptr. 2d 329, 339-40 (1995), the court held that former employees could not sue

21   for wrongful termination if they concealed the existence of felony convictions.  In

22   *Camp*, it was undisputed that the employees would not have been hired had they

23   disclosed the convictions.  In *Hoffman-La Roche, Inc. v. Promega Corp.*, 319 F. Supp.

24   2d 1011, 1028 (N.D. Cal. 2004), the court dismissed a claim for the breach of a patent

25   license agreement.  The court found that the patent for certain DNA-related technology

26   was obtained through fraud on the Patent Office and that the licensor could not,

27   therefore, enforce an agreement to license the technology. *See also Goldstein v. Lees*,

28   46 Cal. App. 3d. 614, 618, 120 Cal. Rptr. 253, 255-56 (1975) (contract for legal

1    services was unenforceable where attorney, who had a conflict of interest, should not

2    have taken the case consistent with his fiduciary duties to the client).  These cases all

3    involve arguments that the contract sought to be enforced should be avoided through

4    fraud in the inducement or other tortious conduct.

5       In contrast to Farmers' cases, the courts have held that **no** equitable theory may

6    be employed to rewrite or ignore specific terms of an express contract for purposes of

7    a damage claim where such terms control the rights and duties of the parties.  In *Dollar*

8    *Systems, Inc. v. Avcar Leasing Systems, Inc.,* 890 F.2d 165, 173 (9th Cir. 1989) the

9    Ninth Circuit upheld the refusal of the district court to apply an unclean hands defense

10   to a claim for damages for breach of contract.  In that case, the district court ruled that

11   a counterclaim for breach of a franchise agreement for failure of the franchisor to

12   provide adequate services "was not barred . . . by the unclean hands doctrine."  890

13   F.2d at 169.  On appeal the franchisor complained that the district court erred by

14   "refusing to apply the doctrine of unclean hands to bar Avcar's claim for rescission

15   and restitution."  *Id.* at 170.  The Ninth Circuit sustained the lower court's ruling: "DSI

16   argues that a negligent breach of contract constitutes unclean hands.  DSI cites no

17   authority for its argument that simple breach of contract merits application of the

18   unclean hands doctrine . . . .  Accordingly, the district court's conclusion that the

19   doctrine of unclean hands was inapplicable was correct."  *Id.* at 173.

20      Farmers urges a reading of *Dollar Systems,* in which the Ninth Circuit

21   supposedly held that the unclean hands defense applied to the contract claim but had

22   not been proven.  Farmers' Opp. 10 n.3.  To the contrary, the better reading of the term

23   "inapplicable" is that the defense is not legally available, not that the defense is

24   available but the defendant did not meet its burden of proof.

25      UNICOM's reading of the *Dollar Systems* case is bolstered by the many

26   authorities cited by UNICOM, none of which Farmers has attempted to distinguish,

27   that no variation of any equitable defense is available to rewrite or ignore specific

28   terms of an express contract for purposes of a damage claim where such terms control

1   the rights and duties of the parties: *Hedging Concepts, Inc. v. First Alliance Mortg.*

2   *Co.*, 41 Cal. App. 4th 1410, 1420, 49 Cal. Rptr. 2d 191, 198 (1996) (quantum meruit

3   award reversed because the terms of the contract governed payment); *California Med.*

4   *Ass'n, Inc. v. Aetna U.S. Healthcare*, 94 Cal. App. 4th 151, 172-73, 114 Cal. Rptr. 2d

5   109, 125-26 (2001) ("as a matter of law, a quasi-contract action for unjust enrichment

6   does not lie where, as here, express binding agreements exist and define the parties'

7   rights"); *Shvarts v. Budget Group, Inc.*, 81 Cal. App. 4th 1153, 1160, 97 Cal. Rptr. 2d

8   722, 727 (2000) ("[I]t is well settled that an action based on an implied-in-fact or

9   quasi-contract cannot lie where there exists between the parties a valid express

10  contract covering the same subject matter"); *Harris v. Kessler*, 124 Cal. App. 299, 302,

11  12 P. 2d 467, 468 (1932) (where the terms of the contract were lawful, the court found

12  that "there is no element of the case which would justify a court, upon the theory of

13  waiver or estoppel, in denying plaintiff the right to enforce the express terms of the

14  contract, as such an agreement cannot be condemned as being oppressive or opposed

15  to equitable principle").

16      The Court's erroneous instruction was not harmless.  Farmers' counsel placed

17  heavy emphasis on this instruction, even going so far as to display it on the projector

18  and read it to the jury.  In the Ninth Circuit, an instructional error requires a new trial

19  "'unless the error is more probably than not harmless.'"  *Gambini v. Total Renal Care,*

20  *Inc.*, 486 F.3d 1087, 1093 (9th Cir. 2007) (*quoting Swinton v. Potomac Corp.*, 270

21  F.3d 794, 802 (9th Cir.2001)).  In *Gambini*, the Ninth Circuit reversed the trial court's

22  determination that an instructional error was harmless and ordered a new trial.

23      Given Farmers' emphasis on the instruction and the jury's verdict on

24  UNICOM's contract claim, a new trial is required.  Farmers' argument that the jury

25  did not rely on the instruction should be rejected.  In the case of an improper

26  instruction, Farmers is not entitled to any favorable inferences.  Farmers "is not

27  entitled to have disputed factual questions resolved in [its] favor because the jury's

28  verdict may have resulted from a misapprehension of law rather than from factual

SSAB LLP

15

1   determinations in favor of the prevailing party." *Id.* There is no way to recreate the

2   jury's deliberation or understand how this instruction was applied to the facts. The

3   unclean hands instruction was, however, at issue before the jury during its

4   deliberations – unlike the authority relied upon by Farmers in its Opposition. *See*

5   *Bulgo v. Munoz*, 853 F.2d 710, 717 (9th Cir. 1988) (jury did not find liability and

6   incorrect comparative fault instruction, which was pertinent only if jury found

7   defendants' liable, was therefore harmless). Because the unclean hands instruction

8   was in error, and Farmers cannot show that the error was most probably harmless, a

9   new trial is required.

10  **E.    The Verdict Reflects Compromise.**

11      The jury's verdict and award is not supported by any evidence or argument in

12  the case. The jury's award of $816,000 on UNICOM's fraud count was not based on

13  any evidence introduced at trial and was grossly insufficient. To support its damage

14  claims, UNICOM introduced undisputed testimony from David Nolte as to the lost

15  license and maintenance fees and late fee charges that would result from certain

16  assumptions concerning Farmers' use of PIE/CICS and by applying UNICOM's

17  quoted rates. Mr. Nolte, testified that there was a range of damages available based

18  on various estimates of Farmers' use of the PIE/CICS Software. Mr. Nolte testified

19  that awards in the amounts of $5,143,006, $8,966,950, $14,109,956, $17,175,607 and

20  $22,318,448 would be appropriate.

21      Farmers did not dispute Mr. Nolte's calculations nor did it offer *any* evidence

22  quantifying the damages available on the fraud claim such as out of pocket losses or

23  delay damages. Farmers introduced no evidence of what damages would be

24  reasonable. Farmers introduced no evidence concerning any alternative license fees

25  for PIE/CICS. Farmers introduced no evidence of actual license fees for comparable

26  software. Rather, Farmers and its damages expert, Terry Lloyd, agreed that Mr.

27  Nolte's calculations were mathematically correct.

28

SSAB LLP

1     All of these factors strongly suggest that the jury's damage award -- $816,000 –

2  was the product of compromise, chance or by any other process other than unanimous

3  reasoning consistent with the evidence.  Contrary to Farmers suggestion, in order to

4  support such an argument UNICOM does not need direct evidence of compromise or

5  highly suspicious messages from the jury that it was deadlocked or wanted to beat

6  weekend traffic.  Evidence of a result that cannot be harmonized by any of the

7  evidence is sufficient to warrant a new trial.

8     UNICOM has not waived its right to complain of a compromise verdict at this

9  juncture.  *Philippine National Oil Co. v. Garret Corp.*, 724 F.2d 803, 806 (9th Cir.

10  1984), cited by Farmers for this proposition, is inapposite.  In *Phillippine National*, the

11  court held that objections to "no damage" verdicts are waived unless they are raised at

12  the time the verdict is read.  This type of defect could be easily cured by additional

13  jury instructions and deliberations.  UNICOM's challenge drives at the heart of the

14  jury's verdict – the jury's conclusion as a whole is inconsistent, irreconcilable and

15  reflective of compromise, which was not the question before the Court in *Phillipine*

16  *National*.

17  **II.    IN THE ALTERNATIVE, THE COURT SHOULD AMEND THE**

18  **        JUDGMENT.**

19     **A.    UNICOM Is Entitled To Amendment Of The Judgment As A Matter**

20     **         Of Law Where Facts Are Not In Dispute.**

21     In lieu of a new trial, UNICOM respectfully requests that the Court amend the

22  judgment to reflect, as a matter of law, the undisputed evidence.  Here, the undisputed

23  sum of damages for unauthorized use of the PIE/CICS software without late fees was

24  $4,100,280.

25     Farmers insists that "there was substantial evidence and testimony introduced at

26  trial reflecting Farmers' use [of the software]," and that "it was reasonable that the jury

27  made the factual determination that Farmers used the PIE Software at all times within

28  the scope of its license."  Farmers' Opp. at 22.  Farmers does not, however, cite any

1    evidence from which the jury would have made that determination.  UNICOM's

2    evidence that Farmers continued to use PIE/CICS on all seven CPUs through January

3    2003 was based specifically upon Farmers' supplemental responses to Interrogatory

4    No. 4, emails specifically discussing the receipt of passwords for certain CPUs, the

5    testimony of Claudia Ku, the testimony of Bob Bailey and the chart prepared by Bailey

6    of the available routes by which Farmers' CPUs could access PIE/CICS.  Farmers

7    adduced no contradictory evidence.  Farmers' self-congratulatory testimony that its

8    technical personnel did their job well was insufficient for any reasonable juror to reject

9    the specific evidence of use by Farmers of PIE/CICS on seven CPUs through January

10    2003.  The only material dispute at trial concerning use of PIE/CICS was Farmers'

11    insistence that UNICOM was not correctly applying the evidence concerning use of

12    PIE/CICS Netgate after January 2003.  The undisputed evidence in the record was that

13    the lost license fees for infringing use of PIE/CICS through January 2003 – excluding

14    late fees– was $4,100,280.

15         The Court has award amounts where the facts are not in dispute, and therefore

16    the court can amend the judgment as a matter of law.  *See Liriano v. Hobart Corp.*,

17    170 F.3d 264, 272-73 (2nd Cir. 1999).  UNICOM is not, as Farmers urges, requesting

18    "additur," wherein the court simply substitutes its own damage award for that of the

19    jury.  *See Dimick v. Schiedt*, 293 U.S. 474, 55 S. Ct. 296 (1935) (disapproving of use

20    of additur under federal law).  In *Liriano* the defendant in a personal injury case

21    disputed liability for plaintiff's injury but did not dispute the amount of the medical

22    bills associated with plaintiff's injury.  The Second Circuit held that the district court's

23    decision to amend the judgment to add the amount of those medical bills, after a

24    finding of liability, did not violate the rule against additur set forth in *Dimick*:

25         The district court did not divine a figure and then make the defendants choose

26         between an increased damage award and a new trial.  It simply adjusted the jury

27         award to account for a discrete item that manifestly should have been part of the

28         damage calculations and as to whose amount there was no dispute.  When a jury

1    has already found liability, federal courts may make such adjustments without
2    running afoul of *Dimick*.

3    *Liriano*, 170 F.3d at 272-73; *see also U.S. E.E.O.C. v. Massey Yardley Chrysler*
4    *Plymouth, Inc.*, 117 F.3d 1244, 1252 (11th Cir. 1997) (upholding district court's
5    upward amendment of jury award; "Courts recognize an exception to *Dimick* where
6    the jury has found the underlying liability and there is no genuine issue as to the
7    correct amount of damages").

8        As Farmers notes, both *Liriano* and *Massey* involve cases where a jury finds
9    liability but fails to award damages despite there being no real genuine issue of fact as
10   to the amount of damages.  This is the case here.  As discussed above, Farmers did not
11   dispute the specific evidence of use of PIE/CICS on seven CPUs through January
12   2003, nor Mr. Nolte's calculations that the fees for such use totaled $4,100,280.

13       In any event, the Court should amend the judgment to award UNICOM nominal
14   damages on the claims on which the jury found Farmers liable.  Damages are an
15   essential element to all of UNICOM's claims and the jury's failure to award UNICOM
16   even nominal damages must be cured.  Farmers argues that amending a judgment to
17   include nominal damages is appropriate where a constitutional right is at issue.
18   Farmers authority, *Taylor v. Green*, 868 F. 2d 162 (5th Cir. 1989) and *James v.*
19   *Tilgham*, 194 F.R.D. 408 (D. Conn. 1999), both happen to involve violations of a
20   constitutional rights.  However, nothing in these cases states that an amendment is *only*
21   appropriate in such cases.  The Court has discretion to award nominal damages
22   whether the right violated was based on constitution, statute or common law
23   principles.  *See U.S. v. Marolf*, 173 F.3d 1213, 1219 (9th Cir. 1999) ("Nominal
24   damages are available where the violation of a ***legal or*** constitutional right produces no
25   'actual damages.'") (emphasis added); *see also Wilson v. Eberle*, 18 F.R.D. 7, 9 (D.
26   Alaska 1955) (in a tort action for false imprisonment the court construed the "intent
27   and meaning of the verdict" to mean that nominal damages should have been awarded
28   and awarded $1 stating that "[t]he rule is well established that nominal damages are

1    recoverable where a **legal right** is to be vindicated against a wrong or invasion of that

2    right") (emphasis added).

3        **B.**    **UNICOM is Entitled to Prejudgment Interest.**

4              *1.*    *UNICOM is Entitled to Prejudgment Interest on its Copyright and*

5                  *DMCA Claims.*

6          Farmers' only argument against the award of prejudgment interest on

7    UNICOM's copyright infringement and DMCA claims is that the jury awarded zero

8    damages.  However, as UNICOM urges in this motion, the damages awarded on

9    UNICOM's fraud claim should also be attributable to UNICOM's copyright

10   infringement and/or contract claims.  Neither party presented evidence or argument

11   suggesting that there were any out-of-pocket or delay damages that were unique to

12   UNICOM's fraud count.  Rather, UNICOM argued that the jury should award

13   UNICOM fraud damages in the same amount as it awarded breach of contract and

14   copyright infringement damages.  Such an award would have been greater than "zero"

15   and therefore capable of bearing interest.

16             *2.*    *UNICOM is Entitled to Prejudgment Interest, or, Alternatively,*

17                 *Late Fees Due Under The TSC Agreement Because UNICOM's*

18                 *Fraud Claim Arises Out of Contract.*

19         The calculation of damages for UNICOM's fraud claim was based upon the fees

20   – including late fees – to which UNICOM was entitled pursuant to the Farmers-TSC

21   License Agreement.  The jury agreed that Farmers concealed its true use of the

22   PIE/CICS Software.  As shown at trial, but for Farmers' fraudulent concealment,

23   UNICOM would have invoiced Farmers in accordance with the TSC Agreement for

24   Farmers' use of PIE/CICS.  Farmers is not entitled to benefit from its wrongful

25   conduct and avoid paying late fees in the amount they agreed to in the TSC Agreement

26   by virtue of its fraud.

27         Because the fraud claim arises from the TSC Agreement, the jury's award on

28   that claim is subject to a 2% per-month late fee as provided for in the TSC Agreement.

Tr. Ex. 11, ¶ 12(H).  Farmers cannot avoid the late fees that they themselves bargained for.

Farmers complains that any assessment of interest based upon a fraud claim should have been determined by a jury, citing Cal. Civ. Code Section 3288.  Here, the damage claim was based upon contract losses capable of being made certain by calculation, Cal. Civ. Code Section 3277.  Here, a federal court may act according to any power afforded to it by federal law.  In *Continental Oil Co. v. United States,* 184 F.2d 802 (9th Cir. 1950) the court upheld the district court's decision to award pre-judgment interest on an award of royalties for oil and gas from public lands.  The Ninth Circuit held: "[W]hen necessary in order to arrive at fair compensation, the court in the exercise of a sound discretion may include interest or its equivalent as an element of damages.  This rule permitting an award of interest 'in the discretion of the court' is one of general recognition."  184 F.2d at 822; *see also Newburger, Loeb & Co., Inc. v. Gross,* 611 F.2d 423, 433 (2nd Cir. 1979) (court awarded pre-judgment interest based upon an interest rate provision in the parties' partnership agreement); *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1141 (2nd Cir. 1994) (pre-judgment interest awarded based upon nonpayment of invoices).

## CONCLUSION

For the reasons detailed herein, UNICOM respectfully requests that the Court grant UNICOM's motion for a new trial.  In the alternative, the Court should exercise its powers to correct the judgment to reflect an award in favor of UNICOM in the sum of $4,100,280, plus interest thereon at the rate of 2% per month commencing May 1, 2004.

DATED:  March 24, 2008          SPILLANE SHAEFFER ARONOFF BANDLOW LLP


By: _____
        Jay M. Spillane
        Attorneys for Plaintiff UNICOM Systems, Inc.